# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 11-2801/2802

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| Keith Dwayne Moore, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: March 12, 2012
Filed: July 9, 2012

_____

Before MELLOY, SMITH, and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

Keith Dwayne Moore appeals from his sentence of 264 months' imprisonment for his convictions for attempting to manufacture methamphetamine, being a felon in possession of a firearm, and attempting to escape from a correctional institution. Moore alleges procedural error in the district court's calculation of the offense level, its refusal to award Moore a one-point reduction of his offense level for timely notice of an intent to plead guilty, and its lack of Federal Rule of Criminal Procedure 32(h) notice before imposing the sentence. We find no error on these issues. However, we remand to the district court for an explanation of the reasons for the two-month upward variance from the Guidelines range of 210–262 months' imprisonment.

I

On December 3, 2010, a Missouri State Highway Patrol Trooper pulled Moore over for a traffic violation. Moore initially reduced the speed of his car, but then accelerated and drove away from the trooper. After a short while, Moore abandoned his car and continued to flee from the trooper on foot, during which the trooper saw a blue object in Moore's hands. The trooper eventually subdued and arrested Moore, and upon a search, found the blue object to be a box that contained a Smith and Wesson Model .22-caliber semi-automatic pistol, two loaded magazines, and a box of ammunition. The trooper also found materials in Moore's car sufficient to manufacture two grams of methamphetamine.

Moore was subsequently indicted in the Eastern District of Missouri for one count of attempting to manufacture methamphetamine and one count of being a felon in possession of a firearm. While these proceedings were pending, Moore was housed in Cape Girardeau County Jail in Missouri. During his incarceration, Moore attempted to escape by dying his jail uniform, loosening bolts from a shower curtain rod, and using the rod with a blanket in an attempt to remove a window bar. Moore did not succeed in bending the window bar but did cause some damage to the jail facilities. Following the escape attempt, Moore was indicted for attempting to escape from custody, a charge to which he initially pleaded not guilty. However, on May 2, 2011, two weeks before the scheduled trial date, Moore notified the district court that he would waive his right to a trial and plead guilty on all three charges.

At a subsequent sentencing hearing, the district court determined that an offense level of 32 and a criminal history category of VI applied. The Guidelines sentencing range was therefore 210–262 months' imprisonment. The offense level was based on United States Sentencing Guidelines § 4B1.4(b)(3), which imposes an offense level of 34 for armed career criminals who "used or possessed the firearm or ammunition in connection with . . . a controlled substance offense." The district court

-2-

then granted Moore a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), which resulted in the final offense level of 32. It did not grant a further one-level reduction under § 3E1.1(b) for timely notification of a guilty plea because the government did not move for such a reduction. Moore's criminal history category of VI was based on his status as an armed career criminal under 18 U.S.C. § 924(e)(1) and U.S.S.G. § 4B1.4(a)(3), which applies that label and category when a defendant has three or more previous convictions for a violent felony, a serious drug offense, or both. Moore met this definition based on a series of convictions over many years, including several for burglary and assault.

The district court sentenced Moore to 264 months' imprisonment. This sentence comprised 240 months' imprisonment for the charges of attempting to manufacture methamphetamine and being a felon in possession of a firearm, plus a 60-month term of imprisonment for attempting to escape from custody, 24 months of which was to run consecutively to the 240-month term. However, in imposing this 264-month sentence, the court noted: "I believe that a sentence within the Guideline range of 210 to 262 months would be sufficient but not greater than necessary to achieve the goals of the federal sentencing laws."

II

A

Moore argues first that the district court erred in applying a base offense level of 34 because its conclusion that he possessed a firearm in connection with a controlled substance offense was incorrect. Moore asserts that he carried materials sufficient only to manufacture a "small personal use amount of methamphetamine" and that the district court should therefore have held the government to a higher standard of proof for showing the gun was used in connection with the controlled substance offense. This Court reviews a district court's interpretation of sentencing

guidelines, as a pure legal question, de novo, United States v. Howard, 413 F.3d 861, 865 (8th Cir. 2005), and its finding of facts for clear error, United States v. Annis, 446 F.3d 852, 855 (8th Cir. 2006).

Under U.S.S.G. § 4B1.4(b)(3)(A), a base offense level of 34 applies if "the defendant used or possessed the firearm or ammunition in connection with . . . a controlled substance offense, as defined in § 4B.2(b)."  Moore is correct that this Court has applied different definitions for the term "in connection with" in situations where the defendant possessed the controlled substance at home for his own personal use rather than in situations where the defendant carried a controlled substance into the public or possessed an amount indicating an intention to distribute.  Where the defendant held only a small amount of drugs for personal use, the standard for showing a connection is more stringent: the government must prove "at a minimum, the firearm had a purpose or effect with respect to the other felony offense because its presence facilitated or had the potential to facilitate the offense, as opposed to being the result of mere accident or coincidence."  United States v. Dalton, 557 F.3d 586, 589 (8th Cir. 2009) (internal marks omitted).  However,

> when a drug user chooses to carry his illegal drugs out into public with a firearm, there are many ways in which the weapon can facilitate the drug offense and dangerously embolden the offender.  Thus a finding of the requisite connection in this situation is consistent with the purpose of § 2K2.1(b)(5) [and § 4B1.4(b)(3)(a)] and cannot be clearly erroneous except, perhaps, in the exceptional circumstance recognized in Application Note 3 to § 2D1.1—if "it is clearly improbable that the weapon was connected with the offense."

United States v. Regans, 125 F.3d 685, 687 (8th Cir. 1997); see also Howard, 413 F.3d at 865 ("In connection with" has the same meaning in U.S.S.G. §§ 4B1.4(b)(3)(a) and 2K2.1(b)(5).).

-4-

Even assuming that Moore possessed the methamphetamine manufacturing materials solely for his personal use, the district court did not err in determining the firearm was connected to the controlled substance offense. Moore chose to carry his illegal drugs into the public while possessing a firearm, and it was not clearly improbable that the weapon was connected with the offense. Further, the district court actually applied the higher evidentiary standard for which Moore argues, finding that the gun facilitated this controlled substance offense:

> The circumstances that are based on the facts that the parties have stipulated I believe reasonably lead to the conclusion that Mr. Moore did possess the firearm and the ammunition in connection with the drug crime. The firearm and ammunition were connected to the crime if for no other reason that they would have or could have facilitated Mr. Moore's escape from the officer, if he had chosen to use the firearm.
>
> Clearly, it was readily accessible to him. All he had to do was open the box and take it out. And, as I said before, the fact that he took the box from the car when he fled, suggests the firearm had some value to him and some potential use in facilitating his drug trafficking activity.

This factual finding was not clearly erroneous, and the district court did not commit procedural error in assigning Moore a base offense level of 34.

B

Moore next argues that the district court erred in refusing to deduct a third point from his offense level for "timely notifying authorities of his intention to enter a plea of guilty." See U.S.S.G. § 3E1.1(b). "We will not disturb a district court's decision to deny or grant a credit for acceptance of responsibility unless that decision is clearly erroneous. As with other findings of fact, the district court is in a unique position to evaluate a defendant's acceptance of responsibility." United States v. Searcy, 233 F.3d 1096, 1102 (8th Cir. 2000) (internal citations omitted).

-5-

Under U.S.S.G. § 3E1.1(b), the government may move to reduce a defendant's offense level by an additional point for acceptance of responsibility if the defendant's notification of an intent to plead guilty is sufficiently timely to permit "the government to avoid preparing for trial and . . . the government and the court to allocate their resources efficiently."  The comments clarify that generally, the notice of a defendant's intention to plead guilty "will occur particularly early in a case."  U.S.S.G. § 3E1.1(b), cmt. n. 6.  This is to effectuate the purposes of the Guideline by allowing "the government [to] avoid preparing for trial and the court [to] schedule its calendar efficiently."  Id.

Moreover, the commentary states that "[b]ecause the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing."  Id.  Our cases show that the government's refusal to file a § 3E1.1(b) motion "must be rationally related to a legitimate governmental end, and the district court's failure to grant a §3E1.1(b) reduction must not be clear error."  United States v. Smith, 422 F.3d 715, 726 (8th Cir. 2005) (internal citations omitted).

Here, Moore filed his intention to plead guilty on May 2, 2011, two weeks before his trial was scheduled to begin, and about three months after his initial indictment.  The government was not irrational and the district court did not commit clear error in determining that the timing of Moore's notice of intention to plead guilty did not permit the government and court to allocate its resources efficiently.  There was no procedural error in the court's refusal to award this point.

C

Moore's third challenge is that the district court erred by failing to give advance notice of its intent to impose an upward departure. Under Federal Rule of Criminal Procedure 32(h),

> Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

However, Rule 32(h) applies only to departures and not to variances. United States v. Foy, 617 F.3d 1029, 1035 (8th Cir. 2010). When a district court imposes a variance, Rule 32(h) does not require advance notice. Id.

Here, the district court imposed a variance rather than a departure. Because, as the district court correctly observed, there was no "reason for a departure based on any provision of the Sentencing Guidelines," any deviation from the Guidelines range instead represented a variance. Therefore, the fact that the court did not provide advance notice was not error.

D

Moore's final argument is that the 264-month sentence is substantively unreasonable. Before we reach that issue, however, we note that the district court imposed a sentence of 264 months' imprisonment on Moore, which is two months in excess of the upper end of the Guidelines range. When a district court imposes a variance, it "must consider the extent of the deviation and ensure that the justification

-7-

is sufficiently compelling to support the degree of the variance." <u>United States v. Richart</u>, 662 F.3d 1037, 1053 (8th Cir. 2011) (internal quotation marks omitted).

Here, however, the district court did not acknowledge that its sentence exceeded the Guidelines range. Rather, it concluded, "I believe a sentence within the Guideline range of 210 to 262 months would be sufficient but not greater than necessary to achieve the goals of the federal sentencing laws." Because the district court did not explain why it varied from the Guidelines range, or even note that such a variance occurred, we are uncertain as to whether the district court misspoke and intended to impose a 262-month sentence or whether it did intend to vary upward by two months. Accordingly, we remand for further explanation, and we do not reach the final issue of this appeal, whether the sentence the district court imposed was substantively reasonable.

_____