McKEAGUE, Circuit Judge,
dissenting.
The majority relies upon United States v. McMurray, 653 F.3d 367 (6th Cir.2011) to determine that Tennessee’s assault statute does not have use or attempted use of physical force as an element. I dissented in McMurray because it was contrary to binding precedent. Likewise, I disagree with the outcome today for the reasons outlined in my McMurray dissent and established further below. I am bound to follow McMurray insofar as it is controlling. However, unlike the majority, I do not believe that McMurray controls the outcome in this case and I dissent insofar as the majority attempts to extend McMurray’s reach.
I.
The majority finds the distinction between misdemeanors and felonies in the ACCA insignificant. In doing so, the majority ignores the fact that the Supreme Court’s violent felony exception to the normal common law interpretation of “physical force” in Johnson v. United States, — U.S. —, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010), was based on precisely that distinction.
In Johnson, the Supreme Court determined that the physical force element of the “violent felony” definition in the ACCA was not satisfied by mere offensive touching. Instead the Court interpreted the statute to require violent physical force. Here, the majority takes Johnson’s “violent felony” standard and applies it to the ACCA’s “misdemeanor crime of domestic violence” found at 18 U.S.C. § 921(a)(33)(A). In so doing, the majority misinterprets Johnson.
The Johnson Court held that “although a common-law term of art should be given its established common-law meaning,” Johnson, 130 S.Ct. at 1270, the common law definition of “physical force” does not apply to violent felonies. This is because “context determines meaning and we do not force term-of-art definitions into contexts where they plainly do not fit and produce nonsense. Here we are interpreting the phrase ‘physical force’ as used in defining not the crime of battery, but rather the statutory category of ‘violent felonies]’ ” Id. (internal citations omitted). However, the Court specifically stated that its holding did not apply to § 921(a)(33)(A): “We have interpreted the phrase ‘physical force’ only in the context of a statutory definition of “violent felony.” We do not decide that the phrase has the same meaning in the context of defining a misdemeanor crime of domestic violence.” Id. at 1273 (emphasis in original).
Just as using the mere touching misdemeanor standard of physical force to de *594 fine violent felonies is misplaced and produces nonsense, so too does using the felony exception to define a misdemean- or. This creates an exception that swallows the rule. Several of our sister circuits have already recognized this. See United States v. Griffith, 455 F.3d 1339, 1345 (11th Cir.2006) (“we do not feel compelled to reach a result at war with common sense”); United States v. Booker, 644 F.3d 12, 20-21 (1st Cir.2011) cert. denied, — U.S. —, 132 S.Ct. 1538, 182 L.Ed.2d 175 (2012) (“There are sound reasons to decline to interpret the two statutes in tandem.... the statutes address significantly different threats. Whereas the ACCA seeks to protect society at large from a diffuse risk of injury or fatality at the hands of armed, recidivist felons, § 922(g)(9) addresses an acute risk to an identifiable class of victims — those in a relationship with a perpetrator of domestic violence”). Although, as the majority points out, there are circuits which have adopted the Johnson felony standard for the misdemeanor provision, they err for the same reasons the majority errs today.
The majority supports its application of Johnson by noting that the ACCA’s misdemeanor language at § 921(a)(33)(A) mirrors its violent felony language. However, the Johnson exception was not clarified until after both statutes were adopted. Despite its extended explanation, the majority thus pretends that Congress acted with full knowledge of the Johnson felony exception instead of with the common law understanding when writing § 921(a)(33)(A). Given the chronology of events, this cannot be the case.
In sum, Johnson rejected the argument that the misdemeanor standard should control the felony definition. By extension, the felony standard should not control the misdemeanor. Simply applying the narrow felony exception to the broader class of misdemeanor domestic assaults ignores the distinction central to Johnson.
II.
In determining that Tennessee’s assault statute categorically lacks an element of “the use or attempted use of physical force,” the majority relies exclusively on McMurray. As I explained in my dissent there, McMurray is out of step with binding precedent in this circuit. And “when a later decision of this court conflicts with one of our prior published decisions, we are still bound by the holding of the earlier case.” Darrah v. City of Oak Park, 255 F.3d 301, 310 (6th Cir.2001). I concur with the majority’s categorical analysis out of respect for the panel rule. United States v. Moody, 206 F.3d 609, 615 (6th Cir.2000).
Nevertheless, under a modified categorical analysis Castleman’s prior domestic assault conviction satisfies the heightened Johnson standard and does not run afoul of McMurray. Castleman was convicted under Tenn.Code Ann. § 39-13-111 after he pled guilty to “intentionally or knowingly” causing bodily injury to the mother of his child. This Court’s holding in McMurray “rest[ed] on the Tennessee statute’s inclusion of reckless conduct,” McMurray, 653 F.3d at 375 n. 6 (emphasis added), and did not address intentionally or knowingly inflicting bodily injury. Today’s decision extends McMurray from reckless infliction of bodily injury to intentional infliction of bodily injury. This outcome is contrary to our precedent, which holds that violent physical force is a necessary element to intentionally or knowingly inflicting bodily injury. See United States v. Alexander, *595 543 F.3d 819, 823 (6th Cir.2008).[1]
The majority distinguishes Alexander because the Michigan statute necessitated injury “requiring medical attention or medical care.” However, that is not the minimum standard in Johnson, which required only “force capable of causing physical pain or injury to another person.” Johnson, 130 S.Ct. at 1271. Tennessee defines bodily injury as “includefing] a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty.” Tenn. Code Ann. § 39-11-106. This by definition meets the Johnson standard of “physical pain or injury”.
This Court’s decision in United States v. Gloss, 661 F.3d 317, 318-19 (6th Cir.2011) cert. denied, — U.S.—, 132 S.Ct. 1777, 182 L.Ed.2d 555 (2012), decided after both McMurray and Johnson, is also instructive. There this Circuit held that the ACCA standard for violent felony was satisfied by Tennessee’s facilitation of armed robbery statute because:
Any robbery ... that causes serious bodily injury, falls under the first clause of the definition of violent felony, as it necessarily involves “the use, attempted use, or threatened use- of physical force against the person of another.” 18 U.S.C. § 924(e)(2)(B)(i). It makes no difference that the defendant was not the person who committed the aggravated robbery. See, e.g., United States v. Brown, 550 F.3d 724, 729 (8th Cir.2008). All that matters is that someone did so, and that the defendant knowingly provided substantial assistance to that person.
Id. at 319 (emphasis in original). The rule in this Circuit after today’s decision is that while the mere facilitation of another’s crime resulting in serious bodily injury is necessarily a crime involving physical force, directly causing such bodily injury is not. .Under this rule assaulting one’s girlfriend does not trigger the ACCA — but providing assistance to a third party who robs one’s girlfriend, during which she gets assaulted, does. This- defies common sense.
Much of the confusion results from the rewording of common law elements in the Model Penal Code.[2] As the First Circuit observed, the apparent disconnect between the ACCA’s focus on the act and the state statute’s (like Tennessee’s) focus on the *596 result can be rectified once their differing perspectives are taken into account. ,See United States v. Nason, 269 F.3d 10, 19-20 (1st Cir.2001). Recognizing that Congress’s use of common law and the state’s adoption of the Model Penal Code both address the same crime makes the ACCA easier to interpret.[3]
The solution is to hold that knowingly or intentionally causing bodily injury necessitates use of physical force. That would solve the apparent contradiction between Alexander and Gloss, which addressed intentional or knowing infliction of bodily injury, and McMurray, which was limited to reckless infliction of bodily injury. Other circuits have already adopted this rule. The First Circuit, for example, in evaluating Maine’s assault statute (which is almost identical to Tennessee’s) has found physical force a necessary element: “Common sense supplies the missing piece of the puzzle: to cause physical injury, force necessarily must be physical in nature. Accordingly, physical force is a formal element of assault under the bodily injury branch of the Maine statute.” United States v. Nason, 269 F.3d 10, 20 (1st Cir.2001) (emphasis in original). This conclusion survived Johnson. United States v. Booker, 644 F.3d 12, 21 (1st Cir.2011) cert. denied, — U.S.—, 132 S.Ct. 1538, 182 L.Ed.2d 175 (2012). Likewise, the Eighth Circuit found that bodily injury is predicated on physical acts. “Smith was charged ... for committing an act intended to cause pain, injury, or offensive or insulting physical contact.... As such, Smith was charged, and pleaded guilty to, an offense with an element of physical force within the meaning of 18 U.S.C.A. § 921(a)(33)(A)(ii).” United States v. Smith, 171 F.3d 617, 621 (8th Cir.1999).
Today’s decision separates the Model Penal Code’s element of intentionally or knowingly causing bodily injury from the ACCA’s element of physical force. This extension of McMurray has the effect of making the “misdemeanor crime of domestic violence” provision of the ACCA a dead letter in Tennessee, as well as any o.ther state using the Model Penal Code’s definition of assault to punish domestic abusers.
The Supreme Court has already rejected an interpretation of § 921(a)(33)(A) that would make the ACCA a “ ‘dead letter’ in some two-thirds of the States from the very beginning.” United States v. Hayes, 555 U.S. 415, 427, 129 S.Ct. 1079, 172 L.Ed.2d 816 (2009). In a different context, the Court noted:
Practical considerations strongly support our reading of § 921(a)(33)(A)’s language. Existing felon-in-possession laws, Congress recognized, were not keeping firearms out of the hands of domestic abusers, because “many people who engage in serious spousal or child *597 abuse ultimately are not charged with or convicted of felonies.” 142 Cong. Rec. 22985 (1996) (statement of Sen. Lautenberg). By extending the federal firearm prohibition to persons convicted of “misdemeanor crime[s] of domestic violence,” proponents of § 922(g)(9) sought to “close this dangerous loophole.”
Id. at 22986.
Construing § 922(g)(9) to exclude the domestic abuser convicted under a generic use-of-force statute (one that does not designate a domestic relationship as an element of the offense) would frustrate Congress’ manifest purpose.
Id. at 426-27, 129 S.Ct. 1079. In Hayes, the Court started from the premise that “domestic abusers were (and are) routinely prosecuted under generally applicable assault or battery laws,” Id. at 427, 129 S.Ct. 1079, and sought to interpret § 921(a)(33)(A) in keeping with that custom. The majority fails to take into account this “manifest purpose” of Congress and reopens a dangerous loophole for domestic offenders. The result — that those convicted of intentional domestic assault in Tennessee may still possess firearms— frustrates Congress’s manifest purpose in adopting § 921(a)(33)(A).
For these reasons I disagree with the reasoning of the majority today and dissent from the majority’s attempt to extend McMurray’s reach.

. Alexander involved Michigan’s statute regarding assaulting an officer:
Looking exclusively at the statutory definition of the offense, the plain language of this provision indicates that “causing bodily injury” is an element of the crime as defined by M.C.L.A. § 750.81 d(2). Violating this statute would therefore entail committing a crime of violence because the element of "causing bodily injury” involves both the "use of physical force against the person of another” (U.S.S.G. § 4B1.2(a)(1)) and "conduct that presents a serious potential risk of physical injury to another” (U.S.S.G. § 4B1.2(a)(2)). Indeed, a conviction under M.C.L.A. § 750.81d(2) requires more than simply a "risk” of physical injury; a conviction requires causing an actual physical injury sufficiently severe to require medical care. If Alexander was in fact convicted under that statute, he would have necessarily committed a crime of violence.
Alexander, 543 F.3d at 823 (emphasis in original).

. Tennessee’s assault statute follows the Model Penal Code, which defines simple assault in part as ”attempt[ing] to cause or purposely, knowingly or recklessly causes[ing] bodily injury to another.” Model Penal Code § 211.1. Prior to codification Tennessee’s common law definition of assault, similar to the ACCA, focused on the act rather than the result. "An assault is an attempt or offer to do a personal violence to another. It is an inchoate violence, with the present means of carrying the intent into effect.” Richels v. State, 33 Tenn. 606, 608 (1854).

. "Violent felonies” under the ACCA and "crimes of violence” under the sentencing guidelines are analyzed the same way. United States v. Gibbs, 626 F.3d 344, 352 n. 6 (6th Cir.2010); also recognized in McMurray, 653 F.3d at 371 n. 1. With regard to the sentencing guidelines: "the offense for which the defendant was convicted must fall within the generic definition of that crime, which is found by surveying how the crime is described across jurisdictions, as well as consulting sources such as the Model Penal Code.... We have recognized the Model Penal Code definition of aggravated assault as the generic definition for the purpose of deciding whether a crime with that label is a crime of violence, at least in states which have merged the crimes of assault and battery.” United States v. Rede-Mendez, 680 F.3d 552, 556-57 (6th Cir.2012) (internal citations omitted). That the Model Penal Code's definition of "aggravated assault” (reflected in Tennessee's statute) is a "violent crime” for purposes of the sentencing guidelines but not. — as a result of McMurray — a "violent felony” for the ACCA further shows that McMurray is out of step with this Circuit's larger precedent.